**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-CR-225 (CSC)** |
| **v.** | : | |
| | : | |
| **JOSIAH HUESO,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Josiah Hueso to 21 days' incarceration, 3 years' probation, 60 hours of community service, and $500 in restitution.

## I.      Introduction

Defendant Josiah Hueso, 30 years old and a car "wrapper" (the process by which a car is covered, in whole or part, in vinyl) participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] Although the Statement of Offense in this matter, filed on May 1, 2023, (ECF No. 26 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021 and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum.

Defendant Hueso pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 21 days incarceration is appropriate in this case because Hueso (1) posted numerous statements on social media on and after January 6 celebrating and justifying the violence, (2) entered the Capitol building after he saw other rioters unlocking and breaking windows of that building and being sprayed with tear gas by police; (3) took photographs of other rioters at and near the Capitol on January 6, (4) briefly entered the Senate Parliamentarian's Office, a sensitive space, and (5) admitted to the FBI that he deleted social media evidence regarding his involvement in the January 6 riot.

The Court must also consider that Hueso's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Hueso's crime support a sentence of 21 days' incarceration, 3 years' probation, 60 hours of community service, and $500 in restitution in this case.

## II.      Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 26 (Statement of Offense), at 1-5.

---

However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Hueso's Role in the January 6, 2021 Attack on the Capitol*

On November 28, 2021, Josiah Hueso had attended with other "America First"[2] members a "Stop the Steal" rally in Phoenix, Arizona. On January 5, 2021, Josiah Hueso flew to Washington, D.C., from his home in San Diego to attend the "Stop the Steal" rally. After attending the rally, Hueso and other members of America First walked to the U.S. Capitol, approaching from the West Front. According to Hueso's interview with the FBI, he stepped over overturned barricades, and saw other rioters being sprayed with tear gas. Hueso also observed rioters unlocking and breaking windows of the U.S. Capitol. He further observed another individual take a crowbar, break a window, and reach through the window to unlock and open the door.

Hueso entered the Capitol building through the fire door near the Senate Parliamentarian's Office at approximately 2:43 p.m., shortly after the initial breach of that location. ECF 26 (Statement of Offense), ¶ 8.  Once inside the building, he entered the door to the Senate Parliamentarian's Office at approximately 2:43 p.m. Id.  While inside, he picked up a fallen sign next to the door to the Senate Parliamentarian's Office. He exited that office at approximately 2:50 p.m. *Id*. According to his FBI interview, while attempting to exit, he was sprayed with tear gas and another individual assisted him in leaving.

---

[2] "America First" refers to a right-wing extremist ideology and group associated with Nick Fuentes. *See* https://www.splcenter.org/fighting-hate/extremist-files/individual/nick-fuentes, visited July 19, 2023. The government does not base its sentencing recommendation in this case on Hueso's involvement with America First, but notes that association here to provide a complete picture of his conduct on January 6.



Image 1 (still shot from Exhibit 1) – Hueso enters the Capitol, recording with his phone



Image 2 (still shot from Exhibit 1) – Hueso exits the Capitol

As discussed in greater detail below, Hueso admitted during an interview with FBI agents that he took photographs during January 6, 2021 but deleted them from his phone. The FBI

identified three photos he posted on his Twitter account, reproduced below. Hueso posted the below image with the caption, "From the Capitol all the way to the Washington Monument. Patriots as far as the eye can see[.]"



*Image 3: a photograph Hueso posted to Twitter*

Hueso posted the caption "Our flag was still there," to the below image, which appears to be of a rioter who climbed some of the covered inaugural scaffolding.



*Image 4: an image Hueso posted to Twitter*

Hueso posted the following caption with the below image, which appears to be taken from the Northwest Terrace, "American patriots as far as the eye can see[.]"



*Image 5: an image Hueso posted to Twitter*

After leaving the U.S. Capitol, Hueso gave an interview to CNN, during which he stated, "a huge group of us stormed inside and as we started-we were basically shouting at the cops. And there were people arguing with them, trying to get them on our side, basically."



*Image 6 (from Exhibit 2 at approximately 2:50): Hueso speaking to CNN*

*Social Media Posts[3]*

During and after the attack on the Capitol, Hueso used a social media account on Twitter (display name @trad_art) to justify the attack and spread misinformation. A selection of social media statements are reproduced below:

On January 6, 2021, former President Trump posted a Tweet that stated, "I am asking for everyone at the U.S. Capitol to remain peaceful. No violence! Remember, WE are the Party of Law & Order – respect the Law and our great men and women in Blue. Thank you!" and Hueso responded, "The cops were scummy.. I don't back them or trust them[.]"

On January 6, 2021, another user posted a Tweet that stated, "We do a little taking back our nation, its called we do a little taking back our nation. [smile emoji]." Hueso posted a Tweet in response stating, "It's called we storm the Capitol!"

---

[3] The United States notes that it did not obtain Hueso's social media posts until after plea negotiations were completed. Only a small number of posts are included in this section.

On January 6, 2021, another user posted a Tweet that include a photograph of members of the U.S. House of Representatives sheltering under their seats. Hueso posted a Tweet in response at approximately 2:42 p.m. that stated, "Remember when people said there would be panic in DC. This is what that looks like. We did this[.]"

On January 6, 2021, Nicholas Fuentes posted the following on Twitter, "Glorious Day." Hueso responded to the Tweet at approximately 3:00 p.m. stating, "AMERICA FIRST."

On January 6, 2021, another user posted the following "Seeing a lot of people saying 'this is what they wanted to happen'… Shut the fuck up! This is the opposite of what they wanted, they are scared to death and know it's only the start of what is to come[.]" Hueso responded at approximately 3:13 p.m., "They should be afraid. I have never seen Americans more angry than I did today[.]"

On January 7, 2021, Hueso responded to a Twitter post that showed a photograph of a police officer's feet standing on a United States flag on the ground. Hueso Tweeted, "Traitors."

On January 7, 2021, Hueso posted, "o7 [emoji representing a military salute] to all the guys I stood arm and arm with yesterday[.]"

On January 8, 2021, in response to another Twitter user asking, "Is it all over Q bros? did we get too cocky?" Hueso responded, "Nope we didn't and it's not over[.]" In another post that same day, Hueso posted, "Now is the time to go after the fucking commies! No more games. The 6th was just the beginning[.]"

On February 11, 2021, Hueso and another Twitter user posted in a conversation thread on Twitter. The other user posted, "People have convinced themselves that the capital siege was more serious than it really was. They've fallen for the leftist gaslighting. None of us did anything illegal. If the left wanted to create false charges, they could do that at any moment. We did nothing wrong."

Hueso posted the following: "There are 200 hundred people who have been arrested. They have wanted lists on the fbi website. How is this not serious? Walking into the Capitol was technically illegal. They're literally using all the stops to track people down." Hueso continued with another post on the conversation thread, stating, "I agree we did nothing wrong but that doesn't matter at this point[.]"

<p style="text-align:center"><em>Hueso's FBI Interview</em></p>

On July 9, 2021, Hueso, with counsel, participated in a voluntary interview with the FBI. Hueso admitted to traveling from San Diego, California to Washington, D.C., arriving on January 6, 2021. He admitted to joining a group of fellow "America First" members where they listened to the former President's speech. Afterwards, the group walked together towards the U.S. Capitol.

Hueso further stated that he stepped over barricades as he got to the Capitol, and as he approached the building, he observed people retreating and being sprayed with what he characterized as tear gas. Hueso further observed people opened unlocked windows of the U.S. Capitol while others broke windows. He specifically remembered one male individual grab a crowbar, break a window of a side door, and reach his hand through the window and open the door.

Hueso admitted to taking multiple pictures and video on his cell phones; however he stated he deleted them before the FBI executed a search warrant at his residence, which was prior to his voluntary interview of July 9, 2021. Hueso further admitted to entering an office, which the United States concludes from the available video evidence was the office of the Senate Parliamentarian. Hueso further stated that the crowd attempted to rush police at the end of a hall, and Hueso was pushed into the line of police, and that he subsequently retraced his steps and left.

While he was attempting to leave, he was sprayed with tear gas. Hueso further admitted that upon leaving the Capitol, a woman with a camera approached him and asked him to describe what happened, and that he later learned the person was with CNN.

*The Charges and Plea Agreement*

On May 17, 2022, the United States charged Hueso by criminal complaint with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On May 25, 2022, law enforcement officers arrested him at the U.S. District Court for the Southern District of California in San Diego, California. On June 24, 2022, the United States charged Hueso by a four count Information containing the same four charges. On May 1, 2023, pursuant to a plea agreement, Hueso pleaded guilty to Count 4 of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Hueso agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Hueso now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Hueso faces up to six months of imprisonment and a fine of up to $5,000. Hueso must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of 21 days incarceration, 3 years' probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Hueso's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Hueso, the absence of violent or destructive acts is not a mitigating factor. Had Hueso engaged in such conduct, he would have faced additional criminal charges.

Among the most important factors in Hueso are:

Hueso entered the Capitol despite having admittedly observed violence, including an individual breaking a window, reaching through the broken window, and opening a door. Hueso also admitted to stepping over disrupted barricades and he engaged in violent rhetoric surrounding January 6.

Hueso further, though briefly, entered a sensitive space of the Capitol, the Senate Parliamentarian's Office. The Senate Parliamentarian's Office is obviously normally private space and not open to members of the public.

Hueso justified and minimized his actions on January 6, from giving an interview to CNN on the very steps of the U.S. Capitol to making social media statements on Twitter in the days and weeks afterwards. He also deleted photographs he took on January 6 from his mobile telephone.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days incarceration in this matter.

### B.  The History and Characteristics of Hueso

As set forth in the PSR (¶ 27), Hueso has no criminal history. Hueso is employed and reports no medical, mental health, or substance abuse issues.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. It is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Hueso's entrance into a sensitive space (the Senate Parliamentarian's Office), and his social media statements attacking law enforcement officials, listing other groups to attack next, and stating he and other rioters did nothing wrong, speaks to the need for a sentence of incarceration for specific deterrence. Hueso's social media is replete with statements celebrating other rioters, attacking law enforcement who defended the Capitol on January 6, and although acknowledging what he did was "illegal," still believed "we did nothing wrong."

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Court must sentence Hueso based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Hueso has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity

among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

15

It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Joshua Dressel*, 21-cr-572 (CRC), the defendant (1) observed chaos and violence against police officers on the West Plaza of the Capitol grounds and watched other rioters trample over barricades, climb scaffolding, scale walls, and physically struggle with police; (2) climbed a banister that led to the Upper West Terrace and the Capitol building; (3) directed and helped other rioters, from atop the banister, climb to the top of the banister; (4) ascended the northwest stairs to the Upper West Terrace outside of the Senate Wing Doors and entered the doors approximately two minutes after the doors had been breached; (5) was among the first wave of rioters who entered the Crypt; (6) deleted videos he recorded of the January 6 assault on the Capitol from his mobile telephone and from his Facebook account; and (7) minimized his unlawful conduct during an interview with FBI agents. Like Hueso, he pleaded guilty to violating 40 U.S.C. §5104. This Court sentenced Dressel to 14 days' incarceration but did not impose a term of probation. Unlike Hueso, his social media posts did not include highly inflammatory remarks about the January 6 riot.

In *United States v. Savanah McDonald*, 21-cr-429, the defendant (1) observed and cheered when a mob of rioters overran police on the Upper West Terrace Staircase; (2) entered the Capitol Building despite having been sprayed with tear gas three times by police officers; (3) was part of the first wave of rioters who entered the Capitol Building on January 6, and she entered through the Senate Fire Door less than 20 seconds after it was opened by other rioters; (4) spent

approximately 40 minutes inside the Capitol Building on January 6; (5) like Hueso, gave an interview shortly after exiting the Capitol Building and sent messages via social media that displayed a total lack of remorse; and (6) subsequently tried to hide evidence of her participation in the riot and provided false or misleading information to FBI agents, including claiming that police officers invited her through the  doors of the Capitol. Like Hueso, she pleaded guilty to violating 40 U.S.C. § 5104()(2)(G). This Court sentenced McDonald to 21 days' incarceration but did not impose a term of probation.

In *United States v. Courtright*, 21-cr-72 (CRC), the defendant, like Hueso, made social media statements after the attack on the Capitol, minimizing her actions and the violence that occurred on January 6. Inside the Capitol building, she stepped onto the floor of the Senate Chamber (although apparently without knowledge of where she was), took a members only sign and returned it only after being told to do so, saw others destroying property, and had social media posts indicating a lack of remorse. This Court sentenced Courtright to 30 days' incineration on a guilty plea to violating 18 U.S.C.  § 1752(a)(1).

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.[5]

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

---

[5] Numerous judges of this Court have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. See, e.g., 18 U.S.C. § 3561(a)(3); *see, e.g., United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(10), which authorizes limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992); *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Hueso must pay $500 in restitution, which reflects in part the role Hueso played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* Hueso's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 7.

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 21 days incarceration, 3 years' probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Jeffrey A. Kiok
JEFFREY A. KIOK
Attorney (detailed)
N.Y. Bar Number 5400221
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 307-5967
Email: jeffrey.kiok2@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

On this 1st day of August 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div style="margin-left:50%;">

/s/ Jeffrey A. Kiok_____
JEFFREY A. KIOK
Attorney (detailed)
N.Y. Bar Number 5400221
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 307-5967
Email: jeffrey.kiok2@usdoj.gov

</div>